THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| WILLIAM P. VAN DALSEM, JR. | * |
| | * |
| Plaintiff | * |
| | * |
| V. | * |
| | *   NO: 4:10CV00035   SWW |
| ED SANDRIDGE, ET AL. | * |
| | * |
| Defendants | * |

**ORDER**

William P. Van Dalsem, Jr. ("Van Dalsem") brings this action for fraud, violation of the Arkansas Deceptive Trade Practices Act, and civil conspiracy against Defendants Ed Sandridge ("Sandridge"), C. Floyd Anderson ("Anderson"), Mark Beasley ("Beasley"), Taakor Holdings of Missouri, Inc. ("Taakor Holdings of Missouri"), Taakor Tropical Hardwoods Holdings, Ltd. ("Taakor Holdings"), and Samuel Sam-Sumana ("Sam-Sumana").

Before the Court are motions to dismiss for lack of personal jurisdiction by Taakor Holdings of Missouri and Taakor Holdings (docket entry #7) and Anderson (docket entry #5) and Van Dalsem's responses in opposition (docket entries #26, #28). After careful consideration, and for reasons that follow, the separate defendants' motions to dismiss for lack of personal jurisdiction will be granted. All claims against Taakor Holdings of Missouri, Taakor Holdings, and Anderson will be dismissed without prejudice.

**I. Background**

Van Dalsem, an Arkansas resident, filed this action in state court alleging that Sandridge, Beasley, and Anderson--individually and as shareholders, officers, and directors of Defendants Taakor Holdings and Taakor Holdings of Missouri--employed him to supervise logging

operations in Sierra Leone for Taakor Tropical Hardwoods, Ltd. ("TTH")--an entity that is not a party to this lawsuit. Anderson removed the case to this court based on diversity of citizenship between the parties and an amount in controversy exceeding $75,000. Thereafter, all other named defendants, with the exception of Sam-Sumana, joined in the removal. Sam-Sumana has not entered an appearance in this case, and it does not appear that he has been served a copy of the complaint and summons.

According to the complaint allegations, Defendants reneged on promises to pay Van Dalsem for work he performed in Sierra Leone and to repay him for money and equipment he loaned them. Van Dalsem further charges that Sandridge, Beasley, and Anderson "personally and corporately" entered into a civil conspiracy to defraud him. According to the complaint allegations, the individual defendants "personally and corporately" paid $350,000 to Sam-Sumana, the Vice President of Sierra Leone, in return for the arrest and unlawful detention of Van Dalsem's employees.

Taakor Holdings and Taakor Holdings of Missouri, hereinafter referred to collectively as "the Taakor Defendants," and Anderson have filed motions to dismiss for lack of personal jurisdiction. The moving parties and Van Dalsem offer the affidavit testimony of Defendant Sandridge, who provides the following information about the Taakor Defendants and TTH. Defendant Taakor Holdings is an entity organized under the laws of Cyprus, formed for the purpose of acquiring 100% of the capital stock of TTH. Taakor Holdings has no place of business, mailing address, telephone listing, or property in Arkansas; has never advertised, marketed, sold, or distributed goods in Arkansas; and, according to Sandridge, has never contracted with or employed anyone from Arkansas. Sandridge Aff., ¶11.

Defendant Taakor Holdings of Missouri, an entity organized under Missouri law, has a

single office, which is located in Missouri. Sandridge Aff., ¶¶3, 10. Taakor Holdings of Missouri owns no property in Arkansas; has never advertised, marketed, sold, or distributed goods in Arkansas; and, according to Sandridge, has never contracted with or employed anyone from Arkansas. Sandridge Aff., ¶10.

Sandridge is a cofounder of TTH, an entity organized under the laws of Sierra Leone, engaged in the business of harvesting, selling, and exporting hardwood timber in Sierra Leone. Sandridge Aff. ¶4. TTH has no property in Arkansas and has never marketed, sold, or distributed any goods or services in Arkansas. *Id*.

Sandridge is a major shareholder of the Taakor Defendants, and he serves as an officer and director of both entities. Defendant Beasley serves as an officer and director of Taakor Holdings and TTH, and he is a major shareholder of Taakor Holdings. Beasley Aff., ¶¶ 5-7. Together, Sandridge and Beasley run the day-to-day operations of the Taakor Defendants and TTH. Sandridge Aff., ¶9; Beasley Aff., ¶8.

Sandridge testifies that the Taakor Defendants maintain separate books and observe all corporate formalities, such as regular shareholder and board of director meetings. Sandridge Aff., ¶¶10-11. Sandridge acknowledges that Taakor Holdings has loaned money to TTH, but he states that the loans were "approved with all corporate formalities." Sandridge Aff., ¶11(16).

Van Dalsem contends that the Taakor Defendants have had several contacts with the state of Arkansas sufficient to support the exercise of personal jurisdiction, the majority of which involve Michael West, an Arkansas resident. By affidavit, West testifies that on February 18, 2007, James Westlake ("Westlake"), who is not a party to this lawsuit, approached him about entering a logging contract to harvest tropical hardwoods in Sierra Leone. *See* West Aff., ¶3 (docket entry #26, Ex. B). Van Dalsem does not allege, and nothing in the record indicates, that

3

Westlake approached West on behalf of the Taakor Defendants.

West recalls that sometime in February 2007, he and Westlake traveled to Kansas City, Missouri and met with Sandridge and others about logging in Sierra Leone. *See* West Aff., ¶4. Although West did not meet Anderson at the meeting, he states that other attendees told him that Anderson would supply all the money for the logging project. West aff., ¶¶4, 6. West testifies that the essential terms of a logging contract were negotiated during the Kansas City meeting. *See* West Aff., ¶¶6-7.

In March 2007, West and Westlake traveled to Sierra Leone to "cruise timer and look at the logistics of reaching the timber once it was located."[1]   *See* West Aff., ¶ 3.  En route to Africa, West and Westlake met Defendant Beasley in Chicago, and Beasley accompanied them to Sierra Leone.

West reports that after he returned to Arkansas from Sierra Leone, he decided to enter the aforementioned logging contract. West received a written "log and haul" contract via FedEx that called for him to provide logging equipment and manpower for harvesting timber in Sierra Leone. West Aff., ¶ 8. A copy of the contract, dated June 7, 2007, bears the signatures of "Mack West" for West Logging and Ed Sandridge for TTH. Docket entry #7, Ex. B. Pursuant to the contract, TTH agreed to advance West money to cover certain expenses, and West agreed to repay TTH from commissions he received for harvesting timber. *See id.*

West recounts that after he signed the log and haul contract and was making preparations in Arkansas to have equipment shipped to Sierra Leone, Sandridge and Beasley visited his home

---

[1] West testifies that during his visit, he met Samuel Sam-Sumana, the Vice President of Sierra Leone.   Van Dalsem names Sam-Sumana as a defendant and alleges that he is a shareholder, officer, and director of Tropical Holdings.

and business and inspected his progress.  West. Aff., ¶¶11, 12.

West traveled to Sierra Leone in October 2007 and transported equipment to a logging encampment in the area.  West states that once logging activities began, Defendant Anderson arrived and inspected the operations.  West states: "When it was announced that Anderson was coming, operations began to change in the sense that it was well stated that 'things had to be in order' for Mr. Anderson because he was the financial backer of the operation."  West Aff., ¶ 14. West testifies that he complained to Anderson that he had not received payment for his work, and Anderson assured him that "he was good for every cent" and would personally see that West was paid.  West Aff., ¶ 16.

West returned to the United States in January 2008 for the purpose of obtaining additional equipment for the logging operation.  He testifies that he returned to the United States at Anderson's instruction and that Anderson's and Beasley's sons accompanied him to Arkansas in order to learn about the logging business.  West Aff., ¶¶17, 18. According to West, Anderson's son called his father on a daily basis to report West's progress, and he referred to himself as "his father's spy."  West Aff., ¶21.  West reports that Sandridge wired him approximately $2,000,000 for equipment, and Anderson telephoned Arkansas daily to inquire about progress in shipping equipment to Sierra Leone.  West Aff., ¶19, 20.

West returned to Sierra Leone in April 2008, *see* West Aff., ¶ 2, but he returned to the United States in July 2008 because, according to him, he did not receive payment for his services rendered under the logging contract.   West Aff., ¶25.  At some point after West returned to Arkansas, he filed suit in Sierra Leone for breach of contract, naming  Sandridge, Beasley, and TTH as defendants.  *See* docket entry #7, Ex. C (West Complaint).

West reports that after he returned to the United States, banks pressed him to make

payments on equipment that he had financed and transported to Sierra Leone. West Aff., ¶26. He further testifies that in an effort to prevent banks from taking the equipment, Sandridge came to Arkansas in November 2008 and assured bank officers that West was "due payments." West Aff., ¶27. Finally, West testifies that in December 2008, Anderson faxed him a contract for the sale of West's interest in the logging operation. West Aff., ¶18. West signed the contract and later received a check for $100,000 from Anderson. *Id*.

Van Dalsem contends that his claims arise from Defendants' contacts with West in Arkansas. By affidavit, Van Dalsem testifies that West hired him in October 2007 to work as a road builder in Sierra Leone. *See* Van Dalsem Aff., ¶3 (Docket entry #26, Ex. D.). However, Van Dalsem left West's employ after a "falling out," and he moved to Freetown, Sierra Leone, where he met Beasley. Van Dalsem Aff., ¶ 5. According to Van Dalsem, Beasley told him "he was too valuable to let go" and hired him as director of engineering services for TTH.[2] Van Dalsem Aff., ¶ 5.

Van Dalsem reports that he worked for TTH in Sierra Leone from January through October 2008. Van Dalsem Aff., ¶¶6,16. According to Van Dalsem, he "was part of upper level management" and attended "about two dozen meetings also attended by Mark Beasley and Ed Sandridge." Van Dalsem testifies that no major decision was made without Anderson's approval and that Anderson financed the logging operation. Van Dalsem Aff., ¶7. Van Dalsem opines that TTH failed to observe corporate formalities, stating: "Having sat in on several meetings with Beasley, Anderson, and Sandridge, I know that no corporate formalities were observed, except

---

[2]In his affidavit, Van Dalsem uses the name "Taakor" and fails to identify a specific "Taakor" entity. However, in his complaint, Van Dalsem alleges that he was employed to act as the Director of Engineering Services for "Taakor Tropical Hardwoods, Ltd." See complaint, ¶ 4(a).

6

perhaps letters were written on Taakor letterhead." Van Dalsem Aff., ¶8.

Both Anderson and Van Dalsem submit Anderson's affidavit. Anderson testifies that he purchased 3% of the outstanding stock of Taakor Holdings in September 2007, after West entered the logging contract with TTH, and he invested additional amounts in late 2007 and February 2008. Anderson Aff., ¶¶ 3, 19, 42, 43. Anderson testifies that he is merely a minority shareholder in Taakor Holdings, he has never been an officer, director, or agent of Taakor Holdings or TTH, and he has never made business decisions on behalf of TTH or Taakor Holdings. Anderson Aff., ¶¶17-21. According to Anderson, neither Sandridge nor Beasley have acted as his agent in connection with any business of TTH or Taakor Holdings.

## II. Separate Defendants' Motions to Dismiss for Lack of Personal Jurisdiction

A federal court sitting in a diversity action may assume jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state. Arkansas's long-arm statute permits the assertion of jurisdiction to the fullest extent allowed by the Fourteenth Amendment's Due Process Clause, which permits the exercise of personal jurisdiction over a nonresident defendant that has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

The Supreme Court has identified two types of personal jurisdiction: general and specific. General personal jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16, 104 S.Ct. 1868 (1984). Specific personal jurisdiction, in contrast, exists only if the

injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id*. at 414, 104 S.Ct. 1868.

Five factors should be considered when determining the sufficiency of a defendant's contacts with the forum state: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest in the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d. 519, 522-23 (8th Cir. 1996). The first three factors are closely related and are of primary importance, while the last two are secondary. *See id.* at 523. Additionally, for obvious reasons, the third factor is relevant only to specific jurisdiction inquiries.

**A. The Taakor Defendants (Taakor Holdings and Taakor Holdings of Missouri)**

The record is void of any evidence that the Taakor Defendants had direct contact with the state of Arkansas. Van Dalsem asserts that Defendants "admit" that Sandridge signed a contract with West, an Arkansas resident, on behalf of Taakor Defendants,[3] but that is not the case. Defendants firmly maintain that neither Taakor Holdings nor Taakor Holdings of Missouri were parties to the log and haul contract between West and TTH, and it is undisputed that Sandridge signed the contract in his capacity as the president of TTH.

Finding no evidence that the Taakor Defendants had direct contact with Arkansas, Court will now consider whether TTH's contacts with the state, if any, can be imputed to the Taakor

---

[3]In his brief opposing dismissal, Van Dalsem does not distinguish between Taakor Holdings and Taakor Holdings of Missouri, and he refers to the entities collectively as "Defendant Taakor" or "Taakor." *See* docket entry #28, at 2 (noting parenthetically that Plaintiff's references to "Taakor" pertain to Defendants Taakor Holdings of Missouri, Inc. and Taakor Tropical Hardwood Holdings, Ltd.).

Defendants. A corporation is not doing business in a state based merely on the activities of its wholly-owned subsidiary, but derivative jurisdiction may be found where the parent controlled and dominated the subsidiary such that the latter's separate corporate existence was effectively disregarded. *See Stienbuch v. Cutler,* 518 F.3d 580, 589 (8th Cir. 2008) (explaining that a corporation is not doing business in a state merely by the presence of its wholly owned subsidiary and that separate entities may be disregarded only where one entity is so organized and controlled by the other that it is a mere instrumentality of the other). The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state. *See Anderson v. Dassault Aviation* 361 F.3d 449, 452 (8th Cir. 2004)(citing *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir.2003)).

      Taakor Holdings owns 100% of TTH's capital stock, and it is undisputed that Sandridge and Beasley are shareholders, officers, and directors of Taakor Holdings and also run the day-to-day operations of TTH. Additionally, although the record contains no evidence indicating that TTH is owned by or otherwise related to Taakor Holdings of Missouri, Sandridge is an officer, director, and major shareholder of Taakor Holdings of Missouri, and Sandridge and Beasley run the day-to-day operations of that business entity. But the fact that stockholders, officers, and managers of one corporation are also stockholders, officers, and managers of another does not make these companies the same corporation, nor the acts of one the acts of the other. *See K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC,* 373 Ark. 14, 32-33, 280 S.W.3d 1, 16 (2008)(concluding that various LLCs were all separate and distinct legal entities regardless of whether they included the same people). The doctrine of piercing the corporate veil is founded in equity and should be applied when the facts warrant its application to prevent an

injustice. *Id*. Here, Van Dalsem testifies that Anderson approved all major decisions in Sierra Leone and that no corporate formalities were observed during meetings he attended there, but he presents no specific facts showing that the corporate form of TTH was abused to such an extent that piercing the corporate veil would be proper.

Even if the evidence justified assigning TTH's activities to the Taakor Defendants, TTH's contacts with Arkansas are insufficient to confer personal jurisdiction. TTH's contract with West was negotiated in Kansas city, and the object of the agreement was to harvest timber in Sierra Leone. Merely entering a contract with West, an Arkansas resident, does not amount to a purposeful contact with Arkansas. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 2184-85 (1985)(noting that prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum).

Van Dalsem argues that the very purpose of the log and haul contact was for "West . . . to purchase and ship logging equipment with operating employees from Arkansas to Sierra Leone, Africa." Docket entry #28, at 2. To the contrary, the contract treats West as an independent contractor; it does not require that he provide equipment and employees from Arkansas. Furthermore, the critical focus is the relationship "among the *defendant*, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186. 204, 97 S. Ct. 2569. 2580 (1977)(emphasis added); West's activities in Arkansas cannot satisfy the requirement of contact with the forum state. *See Hanson v. Dencla*, 357 U.S. 235. 353. 78 S. Ct. 1228, 1239 (1958)("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.").

As for the individual defendants' personal visits and communications to West's home and business in Arkansas, these alleged contacts are unrelated to Van Dalsem's claims, and they do not amount to systematic and continuous contact with the forum state.  Finally, Van Dalsem's testimony regarding his employment with TTH fails to establish that the Taakor Defendants had any contact with Arkansas.  According Van Dalsem, Beasley hired him in Sierra Leone to perform work in Sierra Leone for TTH.

Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts, and the prima facie showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto."  *Id*. (quoting *Block Indus. v. DHJ Indust., Inc*. 495 F.2d 256, 259 (8th Cir. 1974)).  In this case, the Court finds that Van Dalsem has failed to furnish factual evidence sufficient to show that the Taakor Defendants, either directly or through TTH, had contacts with the state of Arkansas sufficient to make a prima facie showing of personal jurisdiction.

### B.  Defendant Anderson

In support of his motion to dismiss for lack of personal jurisdiction, Anderson asserts that no connection exists between his minority interest in Taakor Holdings and Van Dalsem's cause of action, and that no basis exists for the exercise of personal jurisdiction over him in this forum.

In opposition to Anderson's motion, Van Dalsem states:

> Anderson purposefully sent agents into this jurisdiction, namely Beasley and Sandridge, to negotiate contracts . . . to provide heavy equipment, tools, and employees for the logging operation.  Michael West signed his contract in June 2007 in Perry County, Arkansas and hired Plaintiff to work in Sierra Leone pursuant to his contract with Defendants.  Accordingly, Plaintiff would not have been injured "but for" Defendant Anderson's conduct in Arkansas.

11

Docket entry #26, at 6.

Van Dalsem maintains that Anderson, though never physically present in Arkansas, directed activities in the state "for the purpose of furthering his logging venture in Sierra Leone." Docket entry #26, at 3. Those activities, according to Van Dalsem, include the following:

- Anderson sent Beasley and Sandridge to Arkansas as his agents for the purpose of purchasing logging equipment and inspecting the progress in shipping equipment to Sierra Leone.

- Anderson sent his son to Arkansas to "spy" on West and report to him regarding West's progress in obtaining equipment for shipment to Sierra Leone. *See* West Aff., ¶21.

- Anderson "indirectly" wired money to West for purchasing equipment by giving Sandridge money to wire to West's bank account in Arkansas. In support of this assertion, Van Dalsem cites West's affidavit testimony that it was his "understanding based on Sandridge's representation" that money wired to his account came from Anderson. *See* West Aff., ¶19.

- Anderson made several phone calls to West in Arkansas to discuss West's progress in shipping equipment to Sierra Leone.

- In December 2008, Anderson faxed West a copy of an agreement calling for West to sell Anderson his interest in the logging operation for $100,000. West Aff., ¶ 28.

The claim that Anderson sent Beasley and Sandridge to Arkansas is purely speculative, and Van Dalsem provides no evidence that Sandridge or Beasley acted as Anderson's agents in the state. Additionally, the nature and quality of Beasley's and Sandridge's activities in Arkansas and the relation between those activities and Van Dalsem's cause of action do not justify the exercise of personal jurisdiction. Van Dalsem presents evidence that Sandridge and Beasley visited West's Arkansas home several times in 2007, during a period when West was preparing to have equipment transported to Sierra Leone. West Aff., ¶¶11-12. West testifies that during these visits, Sandridge and Beasley merely "inspected" his equipment and business and his progress in preparing equipment to ship to Sierra Leone. *Id.* Additionally, West testifies

12

that in February 2008, Sandridge accompanied him to an equipment auction in Lonoke, Arkansas. Sandridge's and Beasley's activities in Arkansas cannot be fairly described as the type as overt acts by which they reaped the benefits of Arkansas law or purposefully availed themselves of the privilege of conducting business in the state. Furthermore, their activities are unrelated to Van Dalsem's claims against Defendants. Likewise, even accepting that Anderson's son came to Arkansas and acted as his father's spy, his alleged surveillance and reporting activities are insufficient to justify the exercise of personal jurisdiction over Anderson.

Anderson's personal contacts with Arkansas consist of several phone calls, a possible transfer of money, and one facsimile communication. These contacts have no connection to Van Dalsem's claims, and they are insufficient to satisfy the requirements of due process. *See Porter v. Berall*, 293 F. 3d 1073, 1076 (8th Cir. 2002)("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."); *see also Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982)(holding that phone and facsimile communications to the forum, purchase orders and payments sent to the forum, a choice of law clause within the contract regarding the forum state, and delivery of the product within the forum state were not enough to satisfy minimum contacts).

Finally, Van Dalsem argues that "Anderson was in fact the alter ego of Taakor."[4] Docket entry #26, at 6. The Court believes that Van Dalsem intends to say the reverse: that *the Taakor Defendants are the alter egos of Anderson,* thus subjecting Anderson to in personam jurisdiction based on the Taakor Defendants' activities in Arkansas. Even assuming that the Taakor Defendants were merely a facade for Anderson's personal activities, for reasons previously

---

[4] Again, Van Dalsem uses the term "Taakor" as a reference to Defendants Taakor Holdings and Taakor Holdings of Missouri. *See* docket entry #26, at 2.

explained, Van Dalsem has failed to show that the Taakor Defendants had contacts with Arkansas sufficient to confer personal jurisdiction, which renders his alter-ego argument moot.

The Court finds that Van Dalsem has failed to raise the assertion of personal jurisdiction over Anderson beyond the speculative level and thus has failed to establish a prima showing of personal jurisdiction.

### III.

For the reasons stated, the motions to dismiss for lack of personal jurisdiction by Defendants C. Floyd Anderson (docket entry #5) and Defendants Taakor Holdings of Missouri, Inc. and Taakor Tropical Hardwoods Holdings, Ltd. (docket entry #7) are GRANTED. All claims against these separate defendants are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

IT IS SO ORDERED THIS 27TH DAY OF MAY, 2010.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE